IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANDERSON BURTON CONSTRUCTION, INC., a California corporation,<br><br>             Plaintiff,<br><br>   vs.<br><br>ENVIRONMENTAL CONTROL SPECIALISTS, INC., a Hawaii corporation; IN & OUT BUILDERS, INC., a Hawaii corporation; and DOES 1-10,<br><br>             Defendants. | Civ. No. 17-00063 JMS-KSC<br><br>ORDER (1) GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT NO. 1 RE: WAIVER OF SUBROGATION, ECF NO. 98; AND (2) GRANTING IN PART AND DENYING IN PART MOTION FOR SUBSTANTIVE JOINDER, ECF NO. 108 |

**ORDER (1) GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT NO. 1 RE: WAIVER OF SUBROGATION, ECF NO. 98; AND (2) GRANTING IN PART AND DENYING IN PART MOTION FOR SUBSTANTIVE JOINDER, ECF NO. 108**

## I. INTRODUCTION

On October 2, 2017, Anderson Burton Construction, Inc. ("Plaintiff" or "ABC") filed its First Amended Complaint (the "FAC"), ECF No. 38, bringing claims against Environmental Control Specialists, Inc. ("ECS") and In & Out Builders, Inc. ("IOB") (collectively, "Defendants") for declaratory judgment, breach of contract, breach of implied and/or express warranties, and negligence.

1

This suit involves weather-related damage to the Haleakala Visitor Center at Haleakala National Park (the "Visitor Center") that occurred during remodeling of the Visitor Center involving Plaintiff, the general contractor, and Defendants, the subcontractors. FAC ¶¶ 8-14; ABC Concise Statement of Fact ("CSF") ¶ 3, ECF No. 135. Plaintiff alleges that the weather-related damage occurred as a result of one or both of Defendants improperly installing a temporary roof covering on the Visitor Center. FAC ¶¶ 15-20.

IOB moves for summary judgment (and is substantively joined by ECS), arguing that Plaintiff waived its right to subrogation in the IOB Subcontract. The court agrees, and accordingly, only Plaintiff's $5,000 deductible, which is not covered by the waiver, remains at issue.

Thus, IOB's Motion for Summary Judgment No. 1 Re: Waiver of Subrogation is GRANTED IN PART, as to the $698,799.99 payment by Navigators Specialty Insurance Company ("Navigators"), and DENIED IN PART, as to the $5,000 deductible; ECS's Motion for Substantive Joinder is likewise GRANTED IN PART and DENIED IN PART, as to the Motion for Summary Judgment No. 1 Re: Waiver of Subrogation.[1]

---

[1] In a separate order, the court addresses IOB's remaining motions for summary judgment; ECS's Motion for Substantive Joinder is denied as to those remaining motions.

## II. BACKGROUND

**A.    Factual Background**

On August 31, 2015, the National Park Service entered into a contract with Plaintiff, the general contractor, to remodel the Visitor's Center.  FAC ¶ 8. Plaintiff then entered into two subcontracts, one with ECS on September 15, 2015 (the "ECS Subcontract"), and one with IOB on September 18, 2015 (the "IOB Subcontract") (collectively, the "Subcontracts").  FAC ¶¶ 9, 10; ECF Nos. 38-2, 38-3.  Defendants were hired as subcontractors to "Replace Built-Up Roof and Strengthen Building Structure for Seismic Resistance . . . [and] Reconfigure Vestibule/Entrance Doors" of the Visitor Center.  ECF Nos. 38-2 at 7, 38-3 at 7.

On September 21, 2015 through September 25, 2015, ECS worked on the roof of the Visitor's Center, removing old asbestos-containing roofing material. IOB CSF ¶ 5, ECF No. 101.  ECS installed temporary protective plastic sheeting on the roof to protect the Visitor's Center from the weather.  *Id.*  IOB was not working on the roof on September 21, 2015 to September 24, 2015.  *Id.* ¶¶ 8, 9. On September 25, 2015, IOB repaired the tongue and groove on part of the roof, which involved removing the protective plastic sheeting installed by ECS.  *Id.* ¶¶ 9, 10.

On or about September 25 and 26, 2015, the interior of the Visitor's Center sustained weather-related damage. *Id.* ¶ 17. The parties dispute whether the weather that caused the damage was typical weather for the location or more extreme weather caused by Tropical Storm Niala. ABC CSF ¶ 3, ECF No. 135. The parties also dispute whether Plaintiff, IOB, or ECS was responsible for the plastic sheeting failure. *See* FAC ¶ 26; ECS Answer ¶ 12, ECF No. 43; IOB CSF ¶¶ 7, 12, ECF No. 101.

Plaintiff carried commercial general liability insurance issued by Navigators for the policy period of May 12, 2015 to May 12, 2016. ECF No. 141-2 at 10. Plaintiff submitted a claim to Navigators for $731,805 for the damage to the Visitor's Center. ABC CSF ¶ 4, ECF No. 135. Navigators paid Plaintiff's claim, under Plaintiff's commercial general liability policy, in the amount of $698,799.99. IOB CSF ¶ 8, ECF No. 99. Plaintiff paid a $5,000 deductible. Waters Decl. ¶ 6, ECF No. 136-1.

## B.     Procedural History

On October 2, 2017, Plaintiff filed its FAC, bringing claims for declaratory judgment, breach of contract, breach of implied and/or express warranties, and negligence against ECS and IOB. ECF No. 38. On April 4, 2018, IOB filed several motions for summary judgment, including: Motion for Summary

Judgment No. 1 Re: Waiver of Subrogation, ECF No. 98.[2]  Plaintiff filed an

Opposition on May 23, 2018, ECF No. 123, and IOB filed a Reply on May 30,

2018, ECF No. 140.  On April 11, 2018, ECS moved for substantive joinder, ECF

No. 108, which Plaintiff opposed on May 23, 2018, ECF No. 131.  A hearing was

held on June 21, 2018.  ECF No. 170.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Federal Rule of Civil Procedure ("FRCP") 56(a) mandates

summary judgment "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); see also *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252,

1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

---

[2]  As noted above, IOB's other motions for summary judgment are addressed in a separate order.

issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

6

# IV. <u>DISCUSSION</u>

IOB argues that this action is a subrogation action brought by Plaintiff's insurer, Navigators, through Plaintiff, and that "Plaintiff contractually waived subrogation rights against IOB." ECF No. 98-1 at 6. Plaintiff responds that it had contractually waived subrogation rights only for "property insurance" claims, and not for liability insurance claims. ECF No. 123 at 2. Applying California law pursuant to the choice of law provisions in the Subcontracts, the court determines that Plaintiff's commercial general liability insurance is "other property insurance," and thus is included under the subrogation waiver clauses of the Subcontracts. As a result, Plaintiff may not recover the $698,799.99 payment made by Navigators, and the only recovery available to Plaintiff is its $5,000 deductible. The court allows ECS to join IOB's motion for summary judgment concerning waiver of subrogation.

## A.     California Law Applies

As an initial matter, IOB argues that Hawaii law should apply, even though the IOB and ECS Subcontracts' choice of law clauses both provide that California law should apply. These choice of law clauses, identical in both Subcontracts, provide in relevant part, "[d]isputes arising under this Subcontract *solely* between PRIME CONTRACTOR and SUBCONTRACTOR shall be

governed by the laws of the State of California."  ECF Nos. 38-3 at 16, 38-2 at 16 (emphasis added).  IOB argues that the word "solely" in the choice of law clause supports its position that the choice of law clause does not apply here because this case involves a dispute between Plaintiff, IOB, *and* ECS.  The court disagrees, and determines that California law governs.

"In a diversity case, 'federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules.'" *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001) (quoting *Ins. Co. of N. Am. v. Fed. Express Corp.*, 189 F.3d 914, 921 (9th Cir. 1999)).  And, "[u]nder Hawaii law, courts 'look to the state with the most significant relationship to the parties and subject matter' in a choice-of-law analysis." *Standard Register Co. v. Keala*, 2015 WL 3604265, at *6 (D. Haw. June 8, 2015) (quoting *Mikelson v. United Servs. Auto. Ass'n*, 107 Haw. 192, 198, 111 P.3d 601, 607 (2005) (square brackets omitted).

"[A]s a general rule, the construction and legal effect to be given a contract is a question of law." *Found. Int'l, Inc. v. E.T. Ige Constr., Inc.*, 102 Haw. 487, 494-95, 78 P.3d 23, 30-31 (2003) (citation and internal quotation marks omitted).  "[A]bsent an ambiguity,  . . . contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." *Id.* at

495, 78 P.3d at 31 (citation and internal quotation marks omitted); *see also Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 108, 839 P.2d 10, 24 (1992) (providing that "terms of a contract should be interpreted according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning" (citation omitted)). "[A] contract should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause." *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.,* 113 Haw. 77, 92, 148 P.3d 1179, 1194 (2006) (citations and internal quotation marks omitted). The court looks "no further than the four corners of the document to determine whether an ambiguity exists," and "[t]he parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous." *Stanford Carr Dev. Corp. v. Unity House, Inc.,* 111 Haw. 286, 298, 141 P.3d 459, 471 (2006) (citations and internal quotation marks omitted). An "ambiguity is found to exist . . . only when the contract taken as a whole, is reasonably subject to differing interpretation." *Sturla, Inc. v. Fireman's Fund Ins. Co.,* 67 Haw. 203, 209-10, 684 P.2d 960, 964 (1984) (citations omitted).

Both Subcontracts (that is, the contract between Plaintiff and IOB, and the contract between Plaintiff and ECS) have identical choice of law clauses:

> Disputes arising under this Subcontract solely between
> PRIME CONTRACTOR and SUBCONTRACTOR shall

be governed by the laws of the State of California. However, if the issue in dispute is not covered by California law, or if there is a conflict between California law and federal law (i.e., federal statutes and regulations and decisions of the federal courts), the arbitrator or court shall apply federal law.

ECF Nos. 38-3 at 16, 38-2 at 16.

There is no question of the parties' intent when they made the agreement — to apply California law to disputes arising between the parties to the Subcontracts. And all three parties — Plaintiff, IOB, and ECS — agreed to apply California law to disputes under their respective contracts. The fact that two subcontractors are involved in this lawsuit, rather than one, does not affect the parties' clear intent, demonstrated by the unambiguous language of the contracts, to apply California law. Finally, there are no: (1) public policy concerns resulting from application of California law; or (2) an overriding Hawaii interest in application of Hawaii law in this matter. *See Mikelson*, 107 Haw. at 198, 111 P.3d at 607 ("[T]his court has said that the interests of the states and applicable public policy reasons should determine whether Hawaiʻi law or another state's law should apply."). Thus, California law applies.[3]

_____

[3] During oral argument, Plaintiff agreed that the court should apply California law.

## B.    The Subrogation Waiver Applies

IOB argues that Plaintiff and IOB contractually agreed to waiver of subrogation in the IOB Subcontract.  The court agrees that the subrogation waiver applies to the $698,799.99 that Navigators paid Plaintiff for its property damage claim.  But the subrogation waiver does not apply to Plaintiff's $5,000 deductible.

> We begin by restating the controlling principles of contract interpretation: The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting.  When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible.  The words of a contract are to be understood in their ordinary and popular sense.
>
> California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.  The parties' undisclosed intent or understanding is irrelevant to contract interpretation.

*Reilly v. Inquest Tech., Inc.*, 160 Cal. Rptr. 3d 236, 249 (Cal. Ct. App. 2013) (citations and internal editorial marks omitted); *see also Verinata Health, Inc., v. Ariosa Diagnostics, Inc*, 2018 WL 3472168, at *4 (N.D. Cal. July 19, 2018) (discussing contract interpretation under California law).

"Construction contracts often contain provisions which require the parties to waive their right to claim damages against one another up to the amount of insurance coverage available for their losses."  2 Phillip L. Bruner & Patrick J.

11

O'Connor, Jr., *Bruner & O'Connor Construction Law* § 11:403 (June 2018

Update).

> The general purpose of pre-loss provisions in
> construction contracts obligating parties to maintain
> property insurance and to waive subrogation rights is to
> allow the parties to exculpate each other from personal
> liability in the event of a property loss or damage to the
> work occurring during construction, so that they may rely
> instead on insurance to provide recovery for that loss.

16 Steven Plitt et al., *Couch on Insurance* § 224:77 (3d ed. June 2018 Update).

In other words, the purpose of subrogation waivers is "to cut down the

amount of litigation that might otherwise arise due to the existence of an insured

loss." *Bruner & O'Connor Construction Law* § 11:403. To reach this result, many

construction contracts use the standard American Institute of Architects ("AIA")

waiver of subrogation provisions, or a variation thereof. *See id.* §§ 5:1, 11:403.

Here, the IOB Subcontract, based on the AIA form contract, provides

in relevant part:

> **§ C.1.1** The SUBCONTRACTOR . . . shall purchase and
> maintain insurance of the types, with limits of liability,
> containing such endoresements and subject to such terms
> and conditions, as follows: **SEE ATTACHED
> LIABILITY INSURANCE REQUIREMENTS**
> . . . .
> **§ C.1.4  PROPERTY INSURANCE**
> **§ C.1.4.1**  When requested in writing, the PRIME
> CONTRACTOR shall provide the SUBCONTRACTOR
> with copies of the property and equipment policies in

effect for the Project.  The PRIME CONTRACTOR shall notify the SUBCONTRACTOR if the required property insurance polices [sic] are not in effect.  If such property and equipment policies are to be provided by the Owner, the PRIME CONTRACTOR shall request copies thereof from the Owner and shall forward them to the SUBCONTRACTOR upon receipt.

**§ C.1.4.2**  If the required property insurance is not in effect for the full value of the SUBCONTRACTOR's Work, then the PRIME CONTRACTOR shall purchase insurance for the value of the SUBCONTRACTOR's Work, and the PRIME CONTRACTOR shall be reimbursed for the cost of the insurance by an adjustment in the Contract Sum.

. . . .

**§ C.1.5  WAIVERS OF SUBROGATION**
**§ C.1.5.1**  The PRIME CONTRACTOR and SUBCONTRACTOR waive all rights against (1) each other and any of their subcontractors, Lower Tier subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate subcontractors, and any of their Lower Tier subcontractors, Lower Tier subcontractors [sic], agents and employees *for damages caused by fire or other causes of loss to the extent covered by property insurance provided under the agreement between the PRIME CONTRACTOR and the Owner or other property insurance applicable to the Work*, except as such rights as they may have to proceeds of such insurance held by the Owner as a fiduciary.  The SUBCONTRACTOR shall require of the SUBCONTRACTOR'S Lower Tier subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise.  A waiver of subrogation shall be effective as to a person or entity even though that

person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged. **(Not required for Professional Liability).**

ECF Nos. 38-3 at 27-28, 38-2 at 27-28 (italics emphasis added). The dispute largely centers on the meaning of the italicized language.

*Lloyd's Underwriters v. Craig and Rush, Inc.*, 32 Cal. Rptr. 2d 144 (Cal. Ct. App. 1994), interpreted a similar AIA form waiver of subrogation provision. In that case, the insurance policy at issue was an "all-risk" policy[4] that covered the project (or "the Work"). *Id.* at 146-47. The plaintiff argued that its pre-existing "all-risk" policy did not fall under the subrogation waiver because the

---

[4]      'Builders' risk' [or "all-risk"] insurance is a unique form of property insurance that typically covers only projects under construction, renovation, or repair and insures against accidental losses, damages or destruction of property for which the insured has an insurable interest. The purpose of builders' risk insurance is to compensate for loss due to physical damage or destruction caused to a construction project itself.

*Bruner & O'Connor Construction Law* § 11:418 (quoting *Fireman's Fund v. Structural Sys. Tech., Inc.*, 426 F. Supp. 2d 1009, 1025 (D. Neb. 2006)).

An 'all-risk' policy creates coverage of a type not ordinarily present under other types of insurance, and recovery is allowed for fortuitous losses unless the loss is excluded by a specific policy provision; the effect of such a policy is to broaden coverage, and a fortuitous event is one which, to the knowledge of the parties, is dependent upon chance.

*Couch on Insurance* § 148:50.

"all-risk" policy was not a separate policy specifically obtained by the plaintiff for the Work, and limited in coverage to the Work. *Id.* The court disagreed, finding that the "all-risk" policy fell under the language "other property insurance applicable to the Work," and that the waiver of subrogation clause applied. *Id.*

Most important, the court determined that the "plain import" of the phrase "or other property insurance applicable to the Work":

> is that so long as a policy of insurance 'applicable to the Work' pays for the damage, the waiver applies. Appellants do not dispute that their policies (1) were 'applicable to the work' and (2) 'covered' or paid for the loss. Satisfaction of these two criteria allows us to conclude the waiver applies.

*Id.* at 146.

Other courts have applied the same or similar reasoning. *See United Nat'l Ins. Co. v. Peninsula Roofing Co., Inc.*, 2018 WL 1583554, at *4 (D. Md. Mar. 30, 2018) ("The Court reads ['other property insurance applicable to the Work'] to mean that the Waiver applies as long as an insurance policy 'applicable to the Work' pays for the damage."); *Empress Casino Joliet Corp. v. W.E. O'Neil Constr. Co.*, 68 N.E.3d 856, 876, *reh'g denied* (Ill. Dec. 21, 2017) (agreeing with the rationale in *Intergovernmental Risk Mgmt. On Behalf of Vill. of Bartlett v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.*, 692 N.E.2d 739 (Ill. App. Ct. 1998), which in turn relied on *Lloyd's Underwriters*); *Lexington Ins. Co.*

*v. Entrex Commc'n Servs., Inc.*, 749 N.W.2d 124, 135-36 (Neb. 2008) (agreeing with the rationale in *Lloyd's Underwriters*).

Plaintiff argues, however, that this general rule is inapplicable because its commercial general liability policy, a third party policy, is not "other property insurance applicable to the work." That is, Plaintiff claims that its commercial general liability policy is not "property insurance" and thus the subrogation clause does not apply. The court disagrees.

*Intergovernmental Risk* rejected this very argument, stating that "[t]he issue is not whether the policies are called 'all-risk' or 'general liability' policies but whether those policies cover the risks and losses delineated in the construction agreements . . . ." 692 N.E.2d at 747-48. The general liability policy in *Intergovernmental Risk* insured against direct physical loss to the property at issue; therefore, the court reasoned "that *regardless of its classification*, that policy qualified as 'other property insurance applicable to the Work.'" *Id.* at 748 (emphasis added). Accordingly, the court held that the subrogation waiver applied. *Id.*

*Gray Insurance Co. v. Old Tyme Builders, Inc.*, 878 So.2d 603, 608 (La. Ct. App. 2004), *writ denied*, 876 So.2d 814 (June 18, 2004) (mem.), also addressed whether the AIA form contract waiver language "other property

insurance applicable to the Work" "only applies to property insurance, not liability insurance." *Id.* at 607. And in answering that question, the court determined that "other property insurance" applies to "any property damage covered by insurance that was in effect" during the required time period, including a "liability" policy rather than a "property" policy. *Id.* at 608; *see also Am. Zurich Ins. Co. v. Barker Roofing, L.P.*, 387 S.W.3d 54, 65 (Tex. Ct. App. 2012) (similarly holding, applied to business interruption coverage, rather than liability coverage).[5] The court agrees with *Intergovernmental Risk* and *Gray Insurance* and finds that, under California law, "other property insurance" is not limited to a first party property policy, and can include a third party liability policy if it covers the damage at issue.[6]

And although California courts recognize differences between property insurance and liability insurance, *see Garvey v. State Farm Fire & Cas.*

_____

[5] Here, Plaintiff's commercial general liability policy with Navigators covered "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." ECF No. 141-2 at 23. And Navigators made full payment, showing that the commercial general liability policy covered the specific property damage at issue in this case.

[6] The court's determination that the term "property insurance" is not defined as narrowly as argued by Plaintiff is also supported by dictionary definitions of "property insurance." For instance, *Black's Law Dictionary* defines "property insurance" as "[a]n agreement to indemnify against property damage or destruction." *Property Insurance*, *Black's Law Dictionary* (10 ed. 2014). *Merriam-Webster Online Dictionary* defines property insurance as "insurance against direct loss or damage, consequential loss, loss due to liability for damages, or loss due to dishonesty or failure of others to perform their duty." *Property Insurance*, *Merriam-Webster Online Dictionary* (Accessed Aug. 22, 2018), http://www.merriam-webster.com/dictionary/propertyinsurance.

*Co.*, 770 P.2d 704, 709-10 (Cal. 1989) and *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 663, 913 P.2d 878 (Cal. 1995), *as modified on denial of reh'g* (Aug. 31, 1995), these cases do not address the issue of first party policies and third party policies in the context of subrogation waivers in construction contracts, and the meaning of the AIA form contract language "other property insurance applicable to the Work."[7]

Plaintiff's argument that the waiver of subrogation does not apply to third party liability insurance also runs counter to the objective intent of the parties, as evidenced by the contract language. *See Reilly*, 160 Cal. Rptr. 3d at 249. Sections C.1.1 to C.1.5.1 of the Subcontracts demonstrate that the objective intent of the parties was for either the National Park Service or Plaintiff to obtain

---

[7] In both *Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau*, 786 F.2d 101, 104 (2d Cir. 1986) and *St. Paul Fire & Marine Insurance Co. v. Universal Builders Supply*, 409 F.3d 73, 84 (2d Cir. 2005), the Second Circuit recognized the difference between property insurance and liability insurance, and did so in the context of subrogation waivers in construction contracts. However, in making this distinction, the Second Circuit did not address whether the insurance policy of a particular party (namely, the one who assumed the risk for loss to the property of the construction contract) was (1) applicable to the work and (2) covered or paid for the loss. *See Lloyd's Underwriters*, 32 Cal. Rptr. 2d at 146. Rather, the Second Circuit addressed an earlier step in the analysis — determining the risk each party assumed under the contract. *See Tokio Marine*, 786 F.2d at 104; *St. Paul Fire*, 409 F.3d at 84-85. Both *Tokio Marine* and *St. Paul Fire* differentiated between property insurance and liability insurance to support the reasoning that the owner was required to purchase property insurance to cover loss to the property of the construction contract, while the general contractor and subcontractors were required to purchase liability insurance to cover damages to third parties. *See Tokio Marine*, 786 F.2d at 104; *St. Paul Fire*, 409 F.3d at 84-85. Thus, the Second Circuit cases are distinguishable.

insurance that (1) was applicable to the work and (2) covered or paid for loss to the work.[8] *See Lloyd's Underwriters*, 32 Cal. Rptr. 2d at 146. If the court adopted Plaintiff's proposed distinction between property and liability insurance, Plaintiff would be able to avoid the subrogation waiver simply by obtaining commercial general liability insurance instead of, for example, a builder's risk policy, even though both policies would be (1) applicable to the work and (2) cover or pay for the loss. *See Lloyd's Underwriters*, 32 Cal. Rptr. 2d at 146. This result would be counter to the objective intent of the parties.[9]

Although not dispositive, applying the waiver of subrogation clause to Plaintiff's commercial general liability policy "furthers the purpose of the waiver clause" by "avoiding disruption of construction projects and reducing litigation."

---

[8] Section C.1.4.1 requires Plaintiff upon request to "provide the SUBCONTRACTOR with copies of the property and equipment policies in effect for the Project." It also requires Plaintiff to "notify the SUBCONTRACTOR if the required property insurance polices [sic] are not in effect." Finally, "[i]f such property and equipment policies are to be provided by the Owner," Plaintiff has to request copies from the Owner and forward them to the subcontractor. *See* § C.1.4.1.

And § C.1.4.2 requires Plaintiff to "purchase insurance for the value of the SUBCONTRACTOR's Work" if "the required property insurance is not in effect for the full value of the SUBCONTRACTOR's Work."

[9] The last sentence of § C.1.5.1 of the Subcontracts, stating that the waiver of subrogation is effective "whether or not the person or entity had an insurable interest in the property damaged," also appears to suggest that the waiver applies not only to first party policies, but also third party policies.

*See Lexington Ins. Co. v. Entrex Commc'n Servs., Inc.*, 749 N.W.2d 124, 131, 134 (Neb. 2008).[10]

## C.     The Subrogation Waiver Does Not Violate Public Policy

Plaintiff next argues that applying the waiver of subrogation to a liability insurance claim is contrary to public policy: "[a]pplying a property insurance subrogation waiver to commercial general liability insurance would encourage liability insurance carriers to deny or delay the payment of liability claims out of fear that the right to seek subrogation may be waived." ECF No. 123 at 13. Further, plaintiff argues that "[p]ublic policy . . . encourages subcontractors to obtain liability insurance to ensure that when contractors pay a third party for a loss, the responsible entity pays for the damage." *Id.* Plaintiff also argues that applying the subrogation waiver to a liability insurance claim causes

---

[10] Plaintiff argues that IOB proffers inadmissible parole evidence in support of its waiver of subrogation arguments. ECF No. 123 at 11. Plaintiff's argument is moot because the court finds the contract language unambiguous, and thus does not consider parole evidence. In Plaintiff's Surreply, ECF No. 165, Plaintiff challenges IOB's attachment of the Navigators Policy, Dkt. 141-2, and the Waters Deposition, ECF No. 141-3, to IOB's Supplemental Concise Statement of Facts, ECF No. 141. Plaintiff argues that IOB improperly attached supplemental affidavits and declarations without leave of court, as required by LR 56.1(h). Neither of the specifically challenged documents — the Navigators Policy and the Waters Deposition — are "affidavits" or "declarations." Thus, IOB does not run afoul of LR 56.1(h). In any event, Plaintiff is not prejudiced by the court considering the Navigators Policy and the Waters Deposition, particularly because the court considers Plaintiff's surreply arguments regarding that evidence. *See* ECF No. 165.

subcontractor's commercial general liability insurance to be "meaningless," and provides the subcontractor's insurer with a "windfall." *Id.*

But other courts have found that contracts with similar AIA subrogation waiver language did not violate public policy. *See, e.g.*, *Lexington Ins. Co.*, 749 N.W.2d at 131; *Behr v. Hook,* 787 A.2d 499, 504-05 (Vt. 2001); and *Penn Ave. Place Assocs., L.P. v. Century Steel Erectors, Inc.*, 798 A.2d 256, 259 (Pa. Super. Ct. 2002).

In the Subcontracts, the risk of property damage to the Visitor's Center was shifted to Plaintiff or the National Park Service, and away from IOB and ECS. ECF Nos. 38-3 at 27-28, 38-2 at 27-28. Plaintiff's argument that subcontractors should not be dissuaded from obtaining insurance so that "the responsible entity pays for the damage" ignores the function of subrogation waivers in shifting risk between the parties. ECF No. 123 at 13. Plaintiff's argument that subcontractors' commercial general liability insurance is now meaningless ignores the risks that Subcontractors accepted in the Subcontract and fall under the Subcontractors' liability policies, including, for example, injuries to a property nearby or to someone passing by the project. *Id.* Thus, there is no violation of public policy.

# V.  CONCLUSION

For the foregoing reasons, IOB's Motion for Summary Judgment No. 1 Re: Waiver of Subrogation is GRANTED IN PART, as to the $698,799.99 payment by Navigators, and DENIED IN PART, as to the $5,000 deductible; ECS's Motion for Substantive Joinder is GRANTED IN PART, as to the Motion for Summary Judgment No. 1 Re: Waiver of Subrogation, and DENIED IN PART, as to all other motions.[11]

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 22, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Anderson Burton Constr., Inc. v. Envt'l Control Specialists, Inc., et al.*, Civ No. 17-00063 JMS-KSC, Order (1) Granting in Part and Denying in Part Motion for Summary Judgment No. 1 Re: Waiver of Subrogation, ECF No. 98; and (2) Granting in Party and Denying in Part Motion for Substantive Joinder, ECF No. 108

---

[11]  Contrary to Plaintiff's argument, ECS's Motion for Substantive Joinder is timely because it was filed within seven days of IOB's motions for summary judgment.  *See* Local Rule 7.9.  ECS's Motion for Substantive Joinder is granted as to IOB's Motion for Summary Judgment No. 1 Re: Waiver of Subrogation.  The Motion for Substantive Joinder is denied as to the remaining motions for summary judgment, which are addressed in separate order.